# Whiteman, Appellant, *v.* Degnan Chevrolet, Inc.

Argued September 21, 1970.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Michael J. Pepe, Jr.,* for appellant.

*Robert H. Malis,* with him *Malis, Tolson & Malis,* for appellee.

OPINION BY HOFFMAN, J., November 13, 1970:

In October of 1965, Wallace G. Krawczyk, now adjudicated an incompetent (appellant), purchased a new Chevrolet automobile from Degnan Chevrolet, Inc. (appellee), for $3,555.00. Appellant traded in two used motor vehicles at the time of purchase. A conditional sale contract was executed which, after deducting the trade-in allowance, had a balance of $1,172.00. Appellee assigned the conditional sale contract to the Central Penn National Bank of Philadelphia (Central Penn). A total of $612.00 was paid to Central Penn to be applied under the terms of the conditional sale contract, thus reducing the balance of $560.00.

Appellant subsequently defaulted on the conditional sale contract; therefore Central Penn repossessed the Chevrolet. Central Penn later reassigned the contract to appellee; and, in consideration of the balance due of $560.00 plus a repossession charge of $30.00, delivered the automobile to appellee.

Thereafter appellee resold the car for $2,079.00, thereby creating an overage of $1,489.00. Appellant's guardian demanded the return of this surplus; appellee refused, and this suit resulted. Appellee filed preliminary objections in the nature of a demurrer to appellant's complaint on the ground that the complaint failed to set forth a cause of action upon which relief may be granted. The court below sustained appellee's preliminary objections. From this decision the instant appeal followed.

The question presented is whether appellee is entitled to keep the surplus derived from the sale of the automobile. In determining this issue, two Pennsyl-

vania statutes are relevant: the Uniform Commercial Code as adopted in Pennsylvania, Act of April 6, 1953, P. L. 3, §1-101 et seq., as amended, 12A P.S. §1-101 (Supp. 1970) (hereinafter Code) and the Motor Vehicle Sales Finance Act, Act of June 28, 1947, P. L. 1110, §§1-37, 69 P.S. §§601-637.

Section 9-504 of the Code provides that "(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . . (2) *If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus. . . .*" (emphasis added).

Since in the instant case, the conditional sale contract signed by appellant created a security interest which secured payment of the indebtedness on the car, §9-504 requires that appellee return any surplus to appellant. There is no doubt that a substantial surplus was created by the sale of the Chevrolet. Thus, under the Code, appellant did allege a cause of action in his complaint. Cf. *Brandywine Lanes, Inc. v. Pittsburgh National Bank,* 437 Pa. 499, 264 A. 2d 377 (1970).

Appellee argues that the Code does not apply because the above-quoted provision of the Code (§9-504) is in conflict with the Motor Vehicle Sales Finance Act. Section 9-203(2) of the Code provides that "[a] transaction, although subject to [Article 9 of the Code], is also subject to . . . the 'Motor Vehicle Sales Finance Act', . . . in so far as [that] statute by its terms applies to the transaction, and in the case of a conflict between the provisions of this Article and [that] statute, the provisions of such statute control."

The provisions of the Motor Vehicle Sales Finance Act, however, are not in conflict with the portion of §9-504 quoted above. The Motor Vehicle Sales Finance Act sets forth certain rights and obligations of the par-

ties in the event of a default. The Act states that "[w]hen the repossessed motor vehicle under an installment sale contract is not redeemed by the buyer either by termination or reinstatement of the contract within the fifteen (15) day notice of redemption period, the buyer shall forfeit all claim to such motor vehicle and collateral security." Act of June 28, 1947, P. L. 1110, §26, 69 P.S. §626A.

Accordingly it is clear that if appellant were claiming any interest in the automobile, he could not prevail because the above-quoted section specifically provides for the forfeiture of all rights to the motor vehicle itself. But "motor vehicle" is specifically and carefully defined in the Motor Vehicle Sales Finance Act,[1] as is "collateral security."[2] What is at issue is not possession of the Chevrolet itself. Here the parties are contesting the right to the surplus resulting from the sale of that automobile. An examination of these definitions reveals that neither specifically encompasses *pro-*

---

[1] " 'Motor vehicle' shall mean any self-propelled device in which, on which, or by which any person or property is or may be transported or drawn upon a public highway, excepting tractors, power shovels, road machinery, agricultural machinery and other machinery not designed primarily for highway transportation, but which may incidentally transport persons or property on a public highway, and excepting such devices which move upon or are guided by a track or travel through the air and shall include trailers and semi-trailers." Act of June 28, 1947, P.S. 1110, §3, 69 P.S. §603(1).

[2] " 'Collateral security' shall mean any security, other than a security interest in a motor vehicle, which is the subject of an installment sale contract, which is given to secure performance of any obligation of the buyer or of any surety or guarantor for him under an installment sale contract, extension, deferment, renewal or other revision thereof, and the term shall include the undertakings of any surety or guarantor for the buyer and any interest in encumbrance on or pledge of real or personal property other than the motor vehicle which is the subject of the installment sale contract." Act of June 28, 1947, P. L. 1110, §3, 69 P.S. §603(17).

*ceeds* from the sale of the chattel which is the subject of the security agreement.

The relevant situation for which the Motor Vehicle Sales Finance Act directly provides is that in which the amount collected on resale of the secured chattel is less than the amount of the debt. Where such a deficiency exists, the Motor Vehicle Sales Finance Act sets out a detailed collection procedure.[3] But this procedure only permits the seller to receive his bona fide

---

[3] The conditions under which a seller is entitled to bring an action to recover a deficiency are set forth in §26 of the Act:

"B. If the buyer does not redeem the repossessed motor vehicle within the said fifteen (15) day notice of redemption period, then the seller or holder shall not have the right to bring an action or proceeding against the buyer for a deficiency, as provided in section twenty-seven hereof [quoted below], unless there shall have been a public or private sale of the repossessed motor vehicle and collateral security." Act of June 28, 1947, P. L. 1110, §26, 69 P.S. §626B.

Section 27 of the Act provides for obtaining a deficiency judgment:

§627. Deficiency judgment

"If the proceeds of the resale mentioned in section twenty-six above are not sufficient to defray the expenses thereof, the expenses of retaking and storing the motor vehicle to which the seller or holder may be entitled and the net balance due upon the contract, plus the amount of any accrued default charges authorized by this act, the seller or holder may recover the deficiency from the buyer or from any one who has succeeded to the obligations of the buyer: Provided, That the buyer may have the reasonable value of the motor vehicle at the time of resale, determined in any action or proceeding brought by the seller or holder to recover the deficiency, the resale price being prima facie, but not conclusive evidence, of such reasonable value and the said reasonable value, as determined, or the resale price, whichever shall be higher, shall be credited to the buyer on account of his indebtedness. In every action or proceeding for a deficiency the buyer may have the reasonableness of the expense of retaking and storing the motor vehicle determined. Nothing contained in this section shall apply to a deficiency on a resale which was held prior to the effective date of this act." Act of June 28, 1947, P. L. 1110, §27, as amended, 69 P.S. §627.

expenses in a deficiency situation, and insures this result by creating safeguards to stop a seller from making a profit. It is thus not applicable to the instant case where appellee not only recovered the amount of the debt, but also recovered a large *surplus*.

When the purposes behind the Motor Vehicle Sales Finance Act are considered, the conclusion that the above provisions do not apply is reinforced. Appellee is maintaining that the Act should be construed so as to allow appellee to keep the profit he received when the automobile in question was repossessed and sold. I do not believe that such an interpretation is justified. It is clear that this Act was not intended to create a comprehensive system of regulation for the motor vehicle sales industry. Rather, as is set forth in the section of the Act designated "Findings and declarations of policy",[4] the Act was designed to stop certain "unscrupulous and improper practices" in the financing and sale of automobiles. Improper practices included such abuses as ". . . extortionate default, extension, collection, repossession and other charges, unconscionable practices respecting execution of contracts, refinancing of contracts, prepayment, refunds, insurance, repossession and redemption."[5] It was to correct these abuses that the Act was passed. The legislative purpose of correcting these abuses must form the background for the interpretation of this statute.

The specific sections of the Act dealing with sales of a repossessed motor vehicle[6] also must be interpreted in light of the above legislative purposes. The most that may be said of these sections is that the legislature wanted to provide a means for the orderly sale of a repossessed motor vehicle, and to set up a fair system by

---

[4] Act of June 28, 1947, P. L. 1110, §2, 69 P.S. §602.

[5] Act of June 28, 1947, P. L. 1110, §2, 69 P.S. §602(c).

[6] See notes 2 and 3, supra.

which a creditor could collect any deficiency remaining after the sale of the automobile. One may not read into the words of the statute any purpose to determine the outcome of a case where a *surplus* resulted from such repossession and sale, simply because the legislature was not concerned with a surplus situation.

In addition, the Pennsylvania Statutory Construction Act is relevant in the interpretation of both statutes. It provides in pertinent part that:

"Laws or parts of law are in pari materia when they relate to the same persons or things or to the same class of persons or things.

"Laws in pari materia shall be construed together, if possible, as one law." Act of May 28, 1937, P. L. 1019, art. IV, §62, 46 P.S. §562.

There can be no doubt that as regards the subject matter under consideration here, the Motor Vehicle Sales Finance Act and the Code apply to the same "things". The Motor Vehicle Sales Finance Act is ambiguous, for it fails to directly deal with the situation where the resale of an automobile results in a surplus. Appellee relies on *McFarland Estate,* 377 Pa. 290, 105 A. 2d 92 (1954), in which our Supreme Court quoted with approval the following passage from 82 C.J.S., Statutes §366b: " '. . . It must not be overlooked that the rule requiring statutes in pari materia to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and that it cannot be invoked where the language of a statute is clear and unambiguous.' " 377 Pa. at 297, 105 A. 2d at 95-96.

In the instant case, the words of the Motor Vehicle Sales Finance Act are not "clear and unambiguous" and that statute and the Code are in pari materia. These statutes thus must be construed as one. Here the issue is whether appellee must return the surplus to appellant. The Code requires such return and the

Motor Vehicle Sales Finance Act does not deal with the precise subject. The Code must therefore prevail.

Appellant clearly has stated a cause of action on which relief may be granted. Accordingly, because the court below incorrectly applied the Motor Vehicle Sales Finance Act, we reverse the order of the court below sustaining appellee's preliminary objections in the nature of a demurrer and remand the record for proceedings consistent with this opinion.