502 A.2d 1254

**INDUSTRIAL VALLEY BANK AND TRUST CO.,**

v.

**Livingston NASH, and Hyalene Nash.**

**Appeal of Livingston NASH.**

Superior Court of Pennsylvania.

Submitted June 18, 1985.

Filed Dec. 20, 1985.

28

Irv Ackelsberg, Philadelphia, for appellant.

Ivan Wille, Philadelphia, for appellee.

Before MONTEMURO, POPOVICH and WATKINS, JJ.

MONTEMURO, Judge:

This is an appeal taken from an order of the Court of Common Pleas of Philadelphia County, denying defendant's-appellant's [1] (Livingston Nash) motion for summary judgment on his counterclaim and granting summary judgment in favor of the plaintiff-appellee, Industrial Valley Bank and Trust Company.

The facts are as follows: In 1978, Livingston and Hyalene Nash decided to trade in their 1975 Ford automobile for another car. Oak Lane Ford, Inc., apparently had the car they were looking for and on November 29, 1978, they purchased a used 1976 Chevrolet four door Caprice for the price of $4192.70.[2] At the same time, the Nashes executed a motor-vehicle installment sale contract in the total sum of $5575.32. The difference in the cash sale price and the installment contract price is represented by the net trade-in allowance on the Nashes' Ford;[3] the down payment of

---

1. Appellant's wife, Hyalene Nash, was not named in the notice of appeal. We shall therefore only refer to Mr. Nash as appellant.

2. The price included the sales tax of $173.70 and $24.00 for title transfer.

3. The trade-in allowance was $1300.00, less a pay-off of the existing loan of $1211.28, for a "net" trade-in allowance of $88.72.

$604.98; property damage insurance and life, accident and health insurance totaling $691.34; a one year extended service plan cost of $200.00 and finally the finance charge of $1184.98. The Nashes agreed to make 36 successive monthly payments of $154.87 each. The installment sale contract contained the Nashes' authorization to have judgment confessed against them in favor of the seller, Oak Lane Ford, Inc. or its assignors, in the event of their default under the terms of the contract. The installment sale contract was subsequently assigned to the plaintiff-appellee, Industrial Valley Bank and Trust Company.

The Nashes defaulted after having paid nineteen (19) installments for a total of $2942.53, or slightly in excess of 52% of the amount they owed. On January 19, 1979, plaintiff-appellee by confession of judgment on the installment sale contract entered judgment against defendant-appellant in the sum of $5575.72.

On October 17, 1980, plaintiff-appellee gave the defendant-appellant written notice concerning the repossession and future resale of the financed automobile. The vehicle was actually repossessed in October of 1980 and was subsequently sold at a public auction in December of 1980 for the price of $918.20. Because the notice which was sent to the defendant-appellant is critical to the disposition of this appeal, we shall set it forth in its entirety. The notice read:

10/17/80

Mr Livingston Nash
Mrs Hyalene Nash
5036 Wade St.
Phila. PA 19144

Re: 1–920–0831

Dear Mr and Mrs Nash,

You are hereby notified that the following described motor vehicle: 1976 Chevrolet, Serial # IN39V61156107 sold to you under Motor Vehicle Installment Sale dated, November 29, 1978, has been repossessed by or for us in exercise of our rights as holder of the said contract; and is now stored at Philadelphia County.

Unless you reclaim or redeem the vehicle by payment of the redemption price stated below before November 3, 1980 * * we will have it sold or contract to sell it. An itemized statement of the total amount required to redeem the vehicle by payment of the contract in full, is as follows:

| | |
|---|---|
| Unpaid Balance | $2,632.79 |
| Interest Rebate | 149.97 |
| Late Charges | 7.05 |
| Misc. Charges* | 12.00 |
| Repossession Expenses | 100.00 |
| Amount required to redeem | $2,589.87 |

Any personal belongings in vehicle must be claimed before sale of vehicle, or they will be donated to Goodwill or a similar charity.

Payment of the amount required and any notices which you desire to serve upon us should be sent to the Industrial Valley Bank and Trust Company, 412 Old York Road, Jenkintown, Pennsylvania, 19046, marked to the attention of the undersigned.

Very truly yours,
W.J. Gillespie
Collection Supervisor

* plus $2.00 per day storage fee

On January 6, 1983, plaintiff-appellee filed an action in assumpsit alleging therein that following frequent demands, the defendant-appellant refused to pay all or any portion of the judgment which had been entered against defendant-appellant on January 19, 1979.

Defendant-appellant filed an answer together with new matter and a counterclaim. In the counterclaim, defendant-appellant sought to recover the statutory penalty imposed by the Uniform Commercial Code [4] for alleged irregularities in plaintiff's-appellee's repossession and resale of defendant's-appellant's automobile. Article 9, Uniform Commer-

**4.** All references in this opinion to the Uniform Commercial Code (U.C.C.) shall be to the numerical system adopted by the Pennsylvania General Assembly by the Act of November 1, 1979, P.L. 255, No. 86, § 1, 13 Pa.C.S. §§ 1101, *et seq.*

cial Code-Secured Transactions, Act of November 1, 1979, P.L. 255, No. 86, § 1, effective January 1, 1980, 13 Pa.C.S. § 9507(a) [hereinafter the U.C.C.].

On April 2, 1983, plaintiff-appellee filed its reply to defendant's-appellant's new matter and counterclaim and asked the court to enter judgment in its favor in the amount of $1814.63.[5]

Prior to a scheduled arbitration hearing, plaintiff-appellee voluntarily discontinued its suit. Thereafter, the case proceeded solely on defendant's-appellant's counterclaim. On September 22, 1983, the arbitration panel entered an award in favor of defendant-appellant in the amount of $1624.01.[6] From the award of arbitration, the plaintiff-appellee (I.V.B) appealed to the Court of Common Pleas.

Relying on the pleadings, defendant's-appellant's request for admission, and counsel's affidavit, defendant-appellant then moved, pursuant to Pa.R.C.P. 1035, for summary judgment on the counterclaim. Defendant-appellant also asserted that there existed no genuine issues as to any material facts.

The court below denied defendant's-appellant's motion for summary judgment on December 14, 1984 and granted summary judgment in favor of plaintiff-appellee. The court

5. Although there appears to be a difference of four cents (.04), we suspect that the figure of $1814.63 was arrived at as follows:

| | |
|---|---|
| Amount which plaintiff-appellee was still owed by defendant-appellant | $2,632.79 |
| Less amount which plaintiff-appellee says was received for the vehicle at auction | 918.20 |
| | 1,714.59 |
| Plus repossession expenses | 100.00 |
| | $1,814.59 |

6. The figure of $1624.01 was calculated in accordance with the damage formula contained in the U.C.C., 13 Pa.C.S. § 9507(a), i.e., ten percent (10%) of the principal debt plus the credit service charge, i.e., the finance charge. Here the appropriate calculation would be as follows:

| | |
|---|---|
| Principal of debt $4390.34 x 10% | $ 439.03 |
| Finance charge | 1,184.98 |
| Statutory Penalty | $1,624.01 |

held that the provisions of the Motor Vehicle Sales Finance Act, Act of June 28, 1947, P.L. 1110, §§ 1–37, 69 P.S. §§ 601–637, [hereinafter MVSFA], and not the provisions of the U.C.C., were applicable and, since plaintiff-appellee had complied with those provisions, it was entitled to summary judgment. This appeal followed.

For the reasons which follow, we disagree with both the reasoning and finding of the court below and therefore reverse.

For the sake of brevity, as well as clarity, the defendant-appellant Mr. Nash will be referred to hereafter as appellant and the plaintiff-appellee (Industrial Valley Bank and Trust Company) will be referred to as appellee.

■ Appellant's argument on appeal is that a secured creditor which repossesses a motor vehicle and sells it at public auction, as was done here, must adhere to the notice provisions of the U.C.C., 13 Pa.C.S. § 9504(c), which require that the debtor be provided with notice of the "time and place" of the sale. Appellant argues further that if such notice is not given, then the debtor is entitled to the statutory penalty provided for in § 9507(a) of the U.C.C.

Appellee's argument is that since there is a conflict between the notice provisions of the U.C.C. § 9504(c) and the MVSFA § 623 D, the provisions of U.C.C. § 9203(d) compel the application of the notice provisions of § 623 D. Appellee would have us hold that there is a conflict between the two statutes because (1) § 623 D of the MVSFA does not require notice to the debtor of the "time and place" of public sale of the repossessed motor vehicle while § 9504(c) of the U.C.C. does, and (2) since the appellant did not redeem the motor vehicle within the fifteen (15) day notice of redemption provision of MVSFA § 626 A, he forfeited all rights in the vehicle, and therefore to require appellee to give notice of the "time and place" of a public sale in accordance with the provisions of § 9504(c) of the U.C.C. would clearly conflict with MVSFA § 626 A.

The notice provisions of the two statutes are as follows. 13 Pa.C.S. § 9504(c) of the U.C.C. provides:

**Manner of disposition.**—Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.* In the case of consumer goods, no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before renunciation by the debtor of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale. (Emphasis supplied).

On the other hand, 69 P.S. § 623 D of the MVSFA provides:

When repossession of a motor vehicle, which is the subject of an installment sale contract, is effected otherwise than by legal process, the holder shall immediately furnish the buyer with a written "notice of repossession" delivered in person, or sent by registered or certified mail directed to the last known address of the buyer. Such notice shall set forth the buyer's right as to reinstatement of the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle, shall

contain an itemized statement of the total amount required to redeem the motor vehicle by reinstatement or payment of the contract in full, *shall give notice to the buyer of the holder's intent to re-sell the motor vehicle at the expiration of fifteen (15) days from the date of mailing such notice,* shall disclose the place at which the motor vehicle is stored, and shall designate the name and address of the person to whom the buyer shall make payment, or upon whom he may serve notice. (Emphasis supplied).

It cannot be disputed that the notice given to appellant did not set forth the "time and place" of the public sale as required by the U.C.C. § 9504(c). On the other hand, it is also beyond dispute that the contents of the notice sent to appellant on October 17, 1980 (*supra* pages 3–4) were in substantial[7] compliance with the provisions of the MVSFA § 623 D.

Thus, the issue before us for resolution is whether the notice requirements and procedures in the foreclosure of a security interest in a motor vehicle are governed by the U.C.C. or the MVSFA or by both.

The court below predicated its holding that summary judgment in this case had to be entered in favor of the appellee on the language contained in the U.C.C., 13 Pa.C.S. § 9203(d):

**Applicability of other statutes.**—A transaction, although subject to this division, is also subject to ... the 'Motor Vehicle Sales Finance Act' ... insofar as [that] statute by its terms applies to the transaction, *and in the case of conflict between the provisions of this division and [that] statute, the provisions of [that] statute control.* Failure to comply with any applicable statute has

---

**7.** We note that while § 623 D of the MVSFA also requires the secured creditor to give the buyer notice, of the place where the motor vehicle is stored, appellant here was merely told that the vehicle "is now stored in Philadelphia County." In our view, a more precise address within the County (City) of Philadelphia would be required in order to satisfy this requirement found in § 623 D of the MVSFA; however, this lack of specificity by the appellee does not affect our result.

only the effect which is specified therein. (Emphasis supplied).

Without further analysis of § 9203(d), especially with reference to appellee's arguments concerning the existence of a conflict between the notice provision of the U.C.C. and the MVSFA, the court below went on to say that "Pennsylvania Courts have held that the procedure for the foreclosure of a security interest in a motor vehicle is governed by the Motor Vehicle Sales Finance Act and not by Article 9 of the Uniform Commercial Code" (Slip Op. at 3). In support of this legal proposition, the court cited *Industrial Valley Bank and Trust Co. v. Shenker*, 74 D. & C.2d 268 (1975). For the reasons which follow, the reliance of the court below on *Shenker* was misplaced.

In *Shenker*, the defendants defaulted on an automobile loan and the plaintiff bank subsequently repossessed the vehicle. On the same day the bank advised the defendants by certified mail of the repossession pursuant to the provisions of the MVSFA, 69 P.S. § 623 D. The defendants failed to take appropriate action within the specified fifteen (15) day period and the car was sold. The court, in denying defendants' motion for partial summary judgment against the bank's claim for deficiency, held that the bank was only required to give defendants notice after repossession in accordance with the provisions of 69 P.S. § 623 D. The *Shenker* court, relying on the "applicability of other statutes" section of the U.C.C., 12A P.S. § 9–203(2), as amended 13 Pa.C.S. § 9203(d), opined that the defendant's assertion that the U.C.C. requirements were applicable was "wholly untenable." The court in *Shenker* never said why the defendants' position was "wholly untenable" and it failed, as did the court below in this case, to offer any analysis whatsoever of the applicable statutes and, more particularly, whether there was in fact a conflict between them.

The court in *Shenker*, just as the appellee herein, also relied on § 626 A of the MVSFA, which reads:

When the repossessed motor vehicle under an installment sale contract is not redeemed by the buyer either by

termination or reinstatement of the contract within the fifteen (15) days notice of redemption period, the buyer shall forfeit all claim to such motor vehicle and collateral security.

The *Shenker* court went on to say:

Therefore, it would suffice to say that defendants forfeited all claim to the automobile by not taking appropriate action within the allotted 15-day period. Having no interest in said vehicle, there would be no reason to notify defendant of the private sale consummated some five months subsequent to the repossession: *Whiteman v. Degnan Chevrolet, Inc.*, 217 Pa.Superior Ct. 424, 428, 272 A.2d 244 (1970).

74 D. & C.2d, at 271–72. Appellee, as we have said, asks us to adopt this analysis as our own and find a conflict *between* the two statutes; however, the law in *Whiteman* cited as support by the trial court in *Shenker* was exactly the opposite. The Honorable J. Sydney Hoffman authored the opinion of this court in *Whiteman*, and because we find his reasoning therein to be persuasive in our analysis of this appeal, we shall discuss it at length.[8]

The facts in *Whiteman* were set forth by Judge Hoffman as follows:

In October of 1965, Wallace G. Krawczyk, now adjudicated an incompetent (appellant), purchased a new Chevrolet automobile from Degnan Chevrolet, Inc. (appellee), for § 3,555.00. Appellant traded in two used motor vehicles at the time of purchase. A conditional sale contract was executed which, after deducting the trade-in allowance, had a balance of $1,172.00. Appellee assigned the conditional sale contract to Central Penn National Bank of Philadelphia (Central Penn). A total of $612.00 was paid to Central Penn to be applied under the terms of

8. *Whiteman v. Degnan Chevrolet, Inc.*, 217 Pa.Super. 424, 272 A.2d 244 (1970), was decided before the Superior Court was increased in size from a seven (7) judge *en banc* court to a fifteen (15) judge panelized court. The decision in *Whiteman* was unanimous.

the conditional sale contract, thus reducing the balance of $560.00.

Appellant subsequently defaulted on the conditional sale contract; therefore Central Penn repossessed the Chevrolet. Central Penn later reassigned the contract to appellee; and, in consideration of the balance due of $560.00 plus a repossession charge of $30.00, delivered the automobile to appellee.

Thereafter, appellee resold the car for $2,079.00, thereby creating an overage of $1,489.00. Appellant's guardian demanded the return of this surplus; appellee refused, and this suit resulted. Appellee filed preliminary objections in the nature of a demurrer to appellant's complaint on the ground that the complaint failed to set forth a cause of action upon which relief may be granted. The court below sustained appellee's preliminary objections. *Whiteman v. Degnan Chevrolet, Inc., supra,* 217 Pa.Superior Ct. at 426, 272 A.2d at 244–45.

From that decision, appellant appealed. The question presented was whether appellee was entitled to keep the surplus derived from the sale of the automobile.

As in the case before us, the same two Pennsylvania statutes were applicable, i.e., the U.C.C. as adopted in Pennsylvania and the MVSFA. The *Whiteman* court first set forth the relevant provisions of section 9504 of the U.C.C., namely section 9504(a) which reads:

> A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. . . .

and section 9504(b) which reads:

> If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus. . . .

The *Whiteman* court concluded that since the conditional sale contract signed by appellant created a security interest which secured payment of the indebtedness on the car,

§ 9504(b) required that appellee return any surplus to appellant. *Whiteman v. Degnan Chevrolet, Inc., supra.*

Just as in the case before us, appellee had argued that the U.C.C. did not apply because § 9504 of the U.C.C. was in conflict with the MVSFA. Again, just as in the case before us, appellee relied on section 9203(d) of the U.C.C., "applicability of other statutes", for support of its argument that the MVSFA controlled, i.e., that since conflict existed between section 9504 of the U.C.C. and section 626 A of the MVSFA, section 9203(d) of the U.C.C. mandated that the MVSFA be the controlling statute.

The *Whiteman* court dismissed appellee's argument with the following analysis:

The provisions of the Motor Vehicle Sales Finance Act, however, are not in conflict with the portion of § 9–504 quoted above. The Motor Vehicle Sales Finance Act sets forth certain rights and obligations of the parties in the event of a default. The Act states that '[w]hen the repossessed motor vehicle under an installment sale contract is not redeemed by the buyer either by termination or reinstatement of the contract within the fifteen (15) day notice of redemption period, the buyer shall forfeit all claim to such motor vehicle and collateral security.' Act of June 28, 1947, P.L. 1110, § 26, 69 P.S. § 626 A.

Accordingly it is clear that if appellant were claiming any interest in the automobile, he could not prevail because the above-quoted section specifically provides for the forfeiture of all rights to the motor vehicle itself. But 'motor vehicle' is specifically and carefully defined in the Motor Vehicle Sales Finance Act, as is 'collateral security.' What is at issue is not possession of the Chevrolet itself. Here the parties are contesting the right to the surplus resulting from the sale of the automobile. An examination of these definitions reveals that neither specifically encompasses *proceeds* from the sale of the chattel which is the subject of the security agreement.

The relevant situation for which the Motor Vehicle Sales Finance Act directly provides is that in which the amount collected on resale of the secured chattel is less than the amount of the debt. Where such a deficiency exists, the Motor Vehicle Sales Finance Act sets out a detailed collection procedure. But this procedure only permits the seller to receive his bona fide expenses in a deficiency situation, and insures this result by creating safeguards to stop a seller from making a profit. It is thus not applicable to the instant case where appellee not only recovered the amount of the debt, but also recovered a large *surplus.*

*Whiteman v. Degnan Chevrolet, Inc., supra,* 217 Pa.Superior Ct. at 427–30, 272 A.2d at 245–46. (Footnotes omitted, emphasis in original).

That analysis is controlling and dispositive of appellee's argument regarding § 626 A of the MVSFA in the case *sub judice.* Appellant here is not claiming any interest in his automobile; instead, he seeks statutory damages for appellee's alleged non-compliance with the notice provisions of U.C.C. § 9504(c). Accordingly, we find no merit whatsoever in appellee's § 626 A argument.

Appellee would also have us find a conflict between the notice provisions of U.C.C. 9504(c), which requires notice of the "time and place" of public sale, and the notice provisions of § 623 D of the MVSFA. We find no merit to this argument and agree with appellant that there is no conflict.

Preliminarily, and all questions of conflict aside, we note that under the section "Additional Provisions" of the motor vehicle installment sale contract used in this case, which was attached to appellee's complaint and prepared by appellee's assignor, paragraphs 5 and 6 read as follows:

5. Buyer may redeem the Car following repossession for default at any time for a period of at least 15 days after Seller mails a lawful notice of repossession thereof to Buyer, and at any time thereafter before Seller has disposed, or contracted to dispose, of the Car. The re-

demption price shall be the then unpaid Balance hereof, plus any accrued default charges and other amounts lawfully due hereunder, and if default at the time of repossession exceeded 15 days, Buyer shall also pay the expenses of retaking, repairing and storing authorized by law.

6. If the Car is consumer goods as defined in the Pennsylvania Uniform Commercial Code, and if Buyer has prior to repossession for default paid 60% of the Cash Price thereof, Seller shall sell the Car at public or private sale after the expiration of the aforesaid 15 day redemption period and not later than 90 days from the date of repossession. If the Car is not consumer goods as so defined, or if it is but Buyer has not paid 60% of the Cash Price thereof, Seller may at its option, following repossession, (a) sell or otherwise dispose of the Car at public or private sale, or (b) propose to retain the Car in satisfaction of Buyer's obligation hereunder by giving Buyer written notice of such proposal, and if Buyer objects to such proposal within 30 days of receipt of notice thereof, Seller shall sell or otherwise dispose of the Car at public or private sale. *In the event of any public or private sale of the Car, Seller shall give Buyer reasonable notice of the time and place thereof.* Seller shall apply the proceeds of any such sale or other disposition to defray the reasonable expenses of sale, the lawful expenses of retaking and storing the Car, and the then unpaid Balance plus any then lawfully accrued default charges. After any such application of the proceeds, Buyer shall be entitled to any surplus but Buyer shall be liable for any deficiency. (Emphasis added).

The language of paragraph 5 is clearly taken from § 623 D of the MVSFA. However, paragraph 6 speaks in terms of the Pennsylvania Uniform Commercial Code and the seller, appellee's assignor, agreed that "In the event of *any* public or private sale of the car, Seller shall give Buyer reasonable notice of the *time and place* thereof." (Emphasis supplied). In our view, the Seller recognized the applica-

bility of both statutes by the contract language above mentioned and, in compliance with those contract terms, the appellant was entitled to notice of the time and place of the public auction.

Nevertheless, even if there were no such language in the contract, or if the contract language was not applicable to the facts of this case, we still find that there is no conflict between the two statutes.

Just as in *Whiteman,* where the MVSFA is silent with respect to a *surplus* following the sale of a repossessed motor vehicle, the MVSFA is also silent with reference to any procedures governing the disposition of the repossessed motor vehicle. Section 623 D merely requires the seller, or any holder who has lawfully acquired such motor vehicle installment sale contract, to give the buyer notice of intent to sell the motor vehicle at the expiration of fifteen (15) days following the mailing of the notice, and section 626 B states nothing more than disposition may be made by public or private sale. Appellee states that this silence is the kind of conflict which triggers the "applicability of other statutes" section of the U.C.C., § 9203(d). We do not agree.

In enacting the MVSFA, the Pennsylvania legislature determined and declared as a matter of legislative finding:

(a) That an exhaustive study by the Joint State Government Commission discloses nefarious, unscrupulous and improper practices in the financing of the sale of motor vehicles in this Commonwealth which are unjustifiably detrimental to the consumer and inimical to the public welfare. Such practices prevail not only among some sellers, but also among some sales finance companies and some banks, which acquire contracts arising out of installment sales of motor vehicles, and which frequently influence the credit policies of sellers.

(b) That the agreement for the installment sale of motor vehicles in this Commonwealth has been generally cast in the form of the so-called 'Pennsylvania Bailment Lease' contract, in which the seller is technically the lessor, and the buyer is technically the lessee. By the use

of this fictional instrument in the installment sale of motor vehicles, the extension of credit to the purchaser has been so inextricably entwined with the alleged bailment of the motor vehicle as to deprive the consumer of the benefit of existing laws.

(c) That consumers, because of these legal technicalities and because of their unequal bargaining position, are at the mercy of unscrupulous persons and are being intolerably exploited in the installment purchase of motor vehicles. Such exploitation is evident in the unfair provisions of the installment sale contract, exorbitant charges for credit, extortionate default, extension, collection, repossession and other charges, unconscionable practices respecting execution of contracts, refinancing of contracts, prepayment, refunds, insurance, repossession and redemption.

(d) That practices enumerated, and others equally pernicious, have existed to such an extent that regulation of the installment selling of motor vehicles is necessary to the adequate protection of the public interest. Adequate regulation of installment selling must include control of the functions of selling and financing of motor vehicles, whether exercised by the same or by different persons.

Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the welfare of its inhabitants and to protect its citizens from abuses presently existing in the installment sale of motor vehicles, and to that end exercise the police power of the Commonwealth to bring under the supervision of the Commonwealth all persons engaged in the business of extending consumer credit in conjunction with the installment sale of motor vehicles; to establish a system of regulation for the purpose of insuring honest and efficient consumer credit service for installment purchases of motor vehicles; and to provide the administrative machinery necessary for effective enforcement. 69 P.S. § 602.

We are convinced, as was the court in *Whiteman*, that the MVSFA "was not intended to create a comprehensive

system of regulation for the motor vehicle sale industry."
*Whiteman v. Degnan Chevrolet, Inc., supra,* 217 Pa.Superior Ct. at 430, 272 A.2d at 246. The Act was passed instead to correct the abuses as set forth above in the "Findings and declarations of policy" section of the Act and those findings and declarations must be given weighty consideration when the Act is being interpreted.

The U.C.C. on the other hand, adopted by the legislature in 1953, did provide for some regulatory control over the disposition of repossessed collateral which of course includes motor vehicles. Section 9504 requires that "every aspect of the *disposition* including the method, *time, place,* and terms must be commercially reasonable." 13 Pa.C.S. § 9504(c). (Emphasis added). Further, the secured creditor must give the debtor "reasonable notification of the *time and place* of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made...." *Id.* (Emphasis added). Both our supreme court and this court have held that the U.C.C. provision of "commercially reasonable" governs the disposition of repossessed vehicles. *Savoy v. Beneficial Consumer Discount Co.,* 503 Pa. 74, 468 A.2d 465 (1983); *Fidelity Consumer Discount Company v. Clark,* 333 Pa. Super. 306, 482 A.2d 580 (1984); *Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 464 A.2d 1243 (1983); *Alliance Discount Corp. v. Shaw,* 195 Pa.Super. 601, 171 A.2d 548 (1961).

The reason for the section 9504 notice should be apparent. By notifying the debtor of the time and place of public sale, the debtor is given the opportunity to take whatever steps are necessary to protect his interest by taking part in the sale if he so desires. *See* 13 Pa.C.S. § 9504 (Official 1972 Comment, paragraph 5). Professors James J. White and Robert S. Summers say that "the notice requirement is easy to understand and apply; it is inspired by the forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friend to bid for it." J.J. White and R.S. Summers, UNIFORM COMMER-

CIAL CODE, Section 26–9 (Second Edition, 1980) (Footnote omitted).

Appellee seems to be arguing that a conflict exists between the MVSFA and the U.C.C. for the reason that while the U.C.C. requires the secured creditor to give the debtor reasonable notice of the *time and place* of the public sale, the MVSFA has no such requirement; indeed, as we have seen, such a sale absent notice would not be *commercially reasonable* under the U.C.C. 13 Pa.C.S. § 9504(c); *Fidelity Consumer Discount Co. v. Clark, supra.* (Where the court, although finding that the sale was private and not public, remanded to the lower court for an evidentiary hearing to determine whether the secured creditor had met its burden of proof to show that, under the totality of the circumstances, disposition of the collateral was commercially reasonable).

However, we are convinced that the rules of statutory construction compel a result different from that which appellee suggests.

The Pennsylvania Statutory Construction Act is relevant in the interpretation of both statutes. It provides in pertinent part that:

(a) Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same classes of persons or things.

(b) Statutes in *pari materia* shall be construed together, if possible, as one statute.

1 Pa.C.S. § 1932.

On the question of the kind of notice to be given to the debtor by the secured creditor, the MVSFA and the U.C.C. are clearly in *pari materia* since they relate to the identical thing—the sale of a repossessed motor vehicle. As we pursue the possibility of construing them as one law, again the Statutory Construction Act offers a solution. Section 1933 states that a particular or special provision controls a general provision in the same or another statute. See, 1 Pa.C.S. § 1933. Section 9504(c) of the U.C.C. not only requires the sale of repossessed motor vehicles to be com-

mercially reasonable as to method, manner, time, place and terms, it also requires reasonable notice of the time and place of any public sale; on the other hand, section 623 D of the MVSFA merely requires the secured creditor to give the debtor notice of its intent to sell the repossessed vehicle at the expiration of fifteen (15) days from the date of the mailing of the notice of repossession and section 626 B provides that the secured creditor has the right to bring an action against the debtor for any deficiency "unless there shall have been a public or private sale of the repossessed motor vehicle...." We therefore hold that the particular provision in the U.C.C. relating to reasonable notice of the *time and place* of any public sale controls and interprets the silence of the MVSFA on that matter. *See Borough of Millersville v. Township of Lancaster,* 2 Pa.Commw. 587, 279 A.2d 349 (1971), *aff'd.,* 447 Pa. 310, 290 A.2d 102 (1972).

In *Whiteman,* the issue was whether the appellee had to return the surplus to appellant. The U.C.C. required such return and the MVSFA was silent. The *Whiteman* court held that the U.C.C. must prevail. Here, the U.C.C. requires that the debtor be given notice of the time and place of public sale and the MVSFA is silent as to such notice. We hold, therefore, that the U.C.C. must prevail. *See generally Associates Discount Corp. v. Palmer,* 47 N.J. 183, 219 A.2d 858 (1966) (applying Pennsylvania law, and holding that the U.C.C. prevails when the MVSFA is silent).

Finally, we are unable to perceive any possible prejudice to the secured creditor in requiring compliance with the "notice of repossession" requirements as set forth in section 623 D of the MVSFA *and* the notice requirements of section 9504(c) of the U.C.C. The inconvenience of possibly an additional letter and postage stamp is far outweighed by the debtor's inability, because of lack of notice, to protect his interests at the public sale either in person or through relatives or friends. Certainly the salutary goals of the legislature as set forth in its findings and declarations of policy, *supra,* page 1262, will be enhanced rather than impeded by requiring that notice be given pursuant to the requirements of both acts.

For all of the above reasons, we reverse the order of the trial court with instructions to enter judgment in favor of the appellants on their counterclaim in the amount of $1,614.01.