549 A.2d 605

**Furman RALEIGH, Appellant,**

v.

**CREDIT MANAGEMENT COMPANY.**

Superior Court of Pennsylvania.

Argued July 25, 1988.

Decided Sept. 19, 1988.

Reargument Denied Nov. 16, 1988.

David B. Washington, Pittsburgh, for appellant.

Kevin G. Sasinoski, Pittsburgh, for appellee.

Before McEWEN, WATKINS and HESTER, JJ.

WATKINS, Judge:

This case involves an appeal from the judgment of the Court of Common Pleas of Allegheny County, Civil Division, entered on December 3, 1987. We affirm.

In this case, the appellant, Furman Raleigh, purchased an automobile by way of an installment sales agreement and obtained financing through the Churchill R & D Federal Credit Union in 1983. He became delinquent in his payments, making his last payment January 31, 1984. No other payments were made on the vehicle. On July 7, 1984, Churchill R & D Credit Union turned the appellant's delinquent account over to the Credit Management Company for collection. On August 9, 1984, the automobile was repossessed and on that same day Notice of Repossession and impending sale of the car was sent to appellant by certified mail. The automobile was sold at public auction on August 24, 1984.

Appellant contends that the automobile was sold prior to the expiration of the 15–day notice provision requirements of the Motor Vehicle Sales Financing Act, 69 Pa.S.A. 623–626.(MVSFA) The issue appellant raises in this appeal is whether, in computing the 15–day holding period required by the MVSFA, the date of mailing is to be excluded.

Section 625(A) of the Motor Vehicle Sales Financing Act states:

"When repossession of a motor vehicle which is the subject of an installment sales contract is effected within the Commonwealth of Pennsylvania otherwise than by legal process. The holder shall retain such repossessed motor vehicle within the county in which it was retaken for a period of 15 days *after* mailing of notice of repossession of the buyer."

This section makes it clear that the date of mailing is to be excluded when computing the time the holder must retain the automobile prior to sale. Therefore, Credit Management mistakenly sold the automobile prematurely as it was sold on the 15th day after the notice was mailed.

In enacting the MVSFA, the Pennsylvania legislature determined and declared as a matter of legislative finding: (a) That an exhaustive study by the Joint State Government Commission discloses nefarious, unscrupulous and improper practices in the financing of the sale of motor vehicles in this Commonwealth which are unjustifiably detrimental to the consumer and inimical to the public welfare. Such practices prevail not only among some sellers, but also among some sales finance companies and some banks, which acquire contracts arising out of installment sales of motor vehicles, and which frequently influence the credit policies of sellers.

. . .

(c) That consumers, because of these legal technicalities and because of their unequal bargaining position, are at the mercy of unscrupulous persons and are being intolerably exploited in the installment purchase of motor vehicles. Such exploitation is evident in the unfair provisions of the installment sale contract, exorbitant charges for credit, extortionate default, extension, collection, repossession and other charges, unconscionable practices respecting execution of contracts, refinancing of contracts, repayment, refunds, insurance, repossession and redemption.

(d) the practices enumerated, and other equally pernicious, have existed to such an extent that regulation of the installment selling of motor vehicles is necessary to the adequate protection of the public interest. Adequate regulation of installment selling must include control of the functions of selling and financing of motor vehicles, whether exercised by the same of different persons.

Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the welfare of its inhabitants and to protect its citizens from abuses presently existing in the installment sales of motor vehicles, and to that end exercise the police power of the Commonwealth to bring under supervision of the Commonwealth all persons engaged in the business of extend-

ing consumer credit in conjunction with the installment sale of motor vehicles; to establish a system of regulation for the purpose of insuring honest and efficient consumer credit service for installment purchases of motor vehicles; and to provide the administrative machinery necessary for the effective enforcement. 69 P.S. § 602.

We are convinced that the MVSFA "was not intended to create a comprehensive system of regulation for the motor vehicle sale industry." *Whiteman v. Dengan Cheverolet Inc.*, 217 Pa.Superior Ct. 424, 272 A.2d 244 (1970). "The Act was passed instead to correct the abuses as set forth above in the 'Findings and declarations of policy' section of the Act and those findings and declarations must be given weighty consideration when the Act is being interpreted." *Industrial Valley Bank and Trust Co. v. Nash*, 349 Pa.Superior Ct. 27, 502 A.2d 1254 (1985).

In this case the appellant is claiming $2,500.00 in damages because the Credit Management Company sold his repossessed vehicle several hours prior to the expiration of the 15 day notice requirement of the MVSFA. However, given the facts of this case, this court finds that it cannot, in equity and good conscience, award damages based on appellant's claims.

The MVSFA was enacted into law to address egregious conduct. After thoroughly reviewing the record, we find that the Credit Management Company acted in a good faith belief that they were complying with the act, that an ambiguity in the language of sections 623(D) and 625 of the MVSFA led the Credit Management Company into mistakenly believing that they were within their rights, that Credit Management's conduct was not of the type the MVSFA was designed to protect against, that the infraction complained of resulted in a "de minimis" violation of the Act as the vehicle was sold only hours before the expiration of the 15th day, that the debtor/appellant disregarded all notice sent to him by Credit Management, never indicated any intention to redeem the vehicle, nor proved he suffered any damages because of the early sale of the automobile.

As for Credit Management's conduct, the record indicates the the Collection Manager, Rochell Patterson, believed that they were in compliance with the Act. Rochell Patterson's testimony during cross-examination reads:

Q. Miss Patterson, I take it that in your capacity with Credit Management dealing with automobile financing and repossessions all the time, you're familiar, are you not, with the divisions of the Pennsylvania Motor Vehicle Sales Finance Act as far as notice requirements?

A. Yes.

Q. And am I correct that 15 days' notice prior to the sale is required by that Act?

A. The Act reads that the person will be given 15 days from the mailing of such notice of repossession.

Q. So a person is—I'll ask the question again then. Is a person entitled to 15 days notice prior to the sale of the vehicle?

A. Yes, sir.

Q. And I take it that based upon your initial response to my question, you're including the date of August 9, 1984 in your count of the 15 days?

A. Yes, sir.

Q. You don't start counting from the date after it was mailed?

A. Well, the letter was mailed already to Mr. Raleigh on the morning of August 9 and, therefore would have been through the post office. The Motor Vehicle Sales Financing Act specifically states that they would be given 15 days from the date of mailing such notice; so yes, we do include that day.

(Trial transcript at pp. 12, 13)

After reviewing the applicable MVSFA provisions, it is evident that the language of the Act can lead to confusion when trying to determine whether the mailing date is to be included or excluded when calculating the holding period.

■ Section 623(D) of the Act, *"Repossession "*, reads in pertinent part, that the holder "shall give notice to the

buyer of the holder's intent to re-sell the motor vehicle at the expiration of fifteen (15) days from the date of mailing such notice." Section 625 of the Act, *"Redemption and termination of contract after repossession,"* reads in pertinent part, that "the holder shall retain such repossessed motor vehicle within the county in which it was retaken for a period of fifteen (15) days after mailing of notice the repossession to the buyer." Therefore, it is easily understood how this section can lead to the type of mistake made by the creditor in this case. We therefore now hold that the notice required by Section 625 of the MVSFA controls.

As for Credit Management's conduct concerning this case, we find that Credit Management attempted to contact Mr. Raleigh through the mails and by telephone concerning the impending sale of this automobile.

Rochelle Patterson's testimony during direct examination contained the following:

Q. What steps does your company take when a car is repossessed to inform the owner of the car of their rights?

A. We immediately send a notice of repossession by certified mail to the last known address of the resident.

Q. Did you take such steps with Mr. Raleigh?

A. Yes, sir.

.     .     .     .     .

Q. What happened after sending that envelope to the best of your recollection in Mr. Raleigh's particular repossession case?

A. After the notice was sent, normally the post office will give these people a certain period of time to pick up the certified notice. On August 21 I got a call from Mr. Raleigh's attorney at that time, Mr. Raymond Shields. He wanted to know exactly how much we needed for Mr. Raleigh to redeem the vehicle as well as what the bids were on the vehicle as of that date.

I did inform him of the bids, told him that Mr. Raleigh could redeem the car by matching the high bid that we

had on the car and that the vehicle would be sold on August 24.

Q. Did you receive any communication from Mr. Raleigh himself?

A. I know I tried to reach Mr. Raleigh several times and left messages at his residence. On August 14, 16, and 12 there were messages left for him, and then on August 21 I did get the call from his attorney.

On August 23 at 5:00 p.m., when Mr. Raleigh did not make an indication that he was redeeming the car, we made preparations for sale of the vehicle on the morning of August 24.

Q. And when was the car actually sold?

A. August 24.

As for Mr. Raleigh's conduct, we find that he did not make any real attempt to protect his rights concerning this automobile, other than having his attorney inquire as to the bid price on the vehicle.

Furman Raleigh's testimony during cross-examination reads as follows:

Q. Mr. Raleigh, did Credit Management attempt to notify you of the sale of the vehicle by certified mail?

A. Not to my knowledge.

Q. Mr. Raleigh, I'd like to show you a letter. Who is that letter addressed to, and what is the name it's addressed to?

A. It's addressed to Furman Raleigh, 7242 Lincoln Road in Verona.

Q. Is that where you live, Mr. Raleigh?

A. Yes, it is.

Q. What's the date on the post mark?

A. August 9.

Q. Would that be in the year 1984, sir?

A. Yes.

Q. And was that sent by certified mail to you?

A. I never received that.

Q. What's the post office marking on that letter, Mr. Raleigh?

A. This stamp is—

Q. No. What is the post office explanation for nondelivery?

A. It's unclaimed, but how would you know that? That could have been put there by anyone.

We also recognize, that though not dispositive of Mr. Raleigh's ability to redeem the automobile, Mr. Raleigh filed for bankruptcy after this automobile was repossessed. Given the facts before our Court concerning this case, we are not now prepared to award damages when it appears that none have been suffered by the appellant.

Order Affirmed.